## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION
## AT CINCINNATI

| | | |
|---|---|---|
| **CHERRYHILL MANAGEMENT, INC.,**<br>**3621 Symmes Road**<br>**Hamilton, Ohio  45015,** | : <br> : <br> : <br> : | **Case No.** **1:12 CV 955**<br><br>**Judge** |
| **Plaintiff,** | : <br> : | **PLAINTIFF'S COMPLAINT WITH** |
| | : | **JURY DEMAND ENDORSED** |
| **v.** | : | **HEREON** |
| | : | |
| **WOOD HERRON & EVANS, L.L.P.,**<br>**441 Vine Street**<br>**2700 Carew Tower**<br>**Cincinnati, Ohio  45202-2917,** | : <br> : <br> : <br> : <br> : | |
| **Serve:**<br>**Clement H. Luken, Jr.**<br>**441 Vine Street**<br>**2700 Carew Tower**<br>**Cincinnati, Ohio 45202,** | : <br> : <br> : <br> : <br> : <br> : | |
| **Defendant.** | : | |

NOW COMES Plaintiff Cherryhill Management, Inc. ("Cherryhill"), and for its

Complaint against Defendant WOOD HERRON & EVANS, L.L.P ("Wood Herron"), states as

follows:

### STATEMENT OF FACTS

1.      Plaintiff Cherryhill is an Ohio corporation having its principal place of

business in Fairfield, Butler County, Ohio.

2.      Defendant Wood Herron, is an Ohio limited liability partnership and law

firm having its principal place of business in Cincinnati, Hamilton County, Ohio.

3.      Cherryhill operates three thrift stores in southwest Ohio.  In 2005,

Cherryhill decided that it wanted to convert the paper management of its processes and

procedures to electronic management to make its operations more efficient and

effective.  In 2005, Cherryhill hired Libertas Technologies, LLC ("Libertas"), to assist it in that effort.

4.      In 2007, Libertas assigned its employee, Todd Schwartz, to perform much of the computer coding services Cherryhill required.  Cherryhill paid Libertas on a "time and material" basis.  Between 2005 and 2010, Cherryhill paid Libertas more than $700,000.  No written agreement between Cherryhill and Libertas existed.

5.      Schwartz is a former independent contractor of Libertas.  Schwartz became an at-will employee of Libertas on April 1, 2009.

6.      In October 2010, Cherryhill made an offer of employment to Schwartz. Schwartz accepted on about October 14, 2010.  Libertas was initially pleased that Cherryhill had hired Todd Schwartz.   Libertas' attitude quickly changed, however, and within a week, Libertas was demanding that Cherryhill pay additional licensing fees to use the source code that it had already paid Libertas hundreds of thousands of dollars to develop.

7.      Libertas knew that it needed to register a copyright with the United States Copyright Office before commencing suit in any United States District Court.

8.      Libertas asked Wood Herron to assist it in applying to the Copyright Office to register a copyright in the source code it wrote for Cherryhill.

9.      Wood Herron holds itself out as "a leading Intellectual Property law firm comprised of dedicated attorneys and support staff with a legacy of superior Intellectual Property legal services, strong personal relationships, and a record of delivering a high return on value. Integrity and in-depth legal expertise, coupled with technical and business experience, are the hallmarks of our service."  Wood Herron states: "For more than 140 years, [it] has been a regional, national and international leader in providing

2

innovative solutions for clients seeking to protect what is theirs. Our clients are leaders in science and industry worldwide. Our attorneys possess the requisite skills to protect the intellectual property assets of our clients, including . . . copyrights."

10.     During the morning of November 5, 2010, Libertas founder and employee Tim Bankes sent an email to Stephen E. Gillen, Esq., a partner of Defendant Wood Herron.

11.     Gillen is a partner in Wood Herron and is licensed to practice law in Ohio. Gillen holds himself out as an attorney who "consults clients in . . . computer law, copyrights, and related matters. His clients have included . . . software programmers from Maine to California. Steve has written and spoken nationally on various publishing and copyright topics and teaches courses in Media Law at the University of Cincinnati." Gillen has been retained by litigants as an expert witness on copyright questions in a variety of contexts. He has represented clients in "high stakes software implementation transactions" and the "negotiation of a variety of software license and service agreements."

12.     Gillen is a prodigious author whose articles include: Author Warranties: Options for Contract Clauses (*IBPA Independent*, April 2011); Printers' Terms: What the Boilerplate Means and Where There's Wiggle Room (*IBPA Independent*, March 2011); Rights of, and Wrongs about, Journal Publishing: The Truth about Copyright Transfer (*Advanced Materials & Processes,* an ASM International Publication, January 2011); A New Year's Resolution Worth Keeping: Time to Review Your Purchase Order Form (*IBPA Independent*, January 2011); The Bug Checklist: Protect Yourself Against Snafus in Software Vendors' Licenses (*IBPA Independent*, November 2010); Negotiating Styles: Zero-sum vs. Win/Win (*IBPA Independent*, October 2010); Contract Updates for the e-

3

Book Era (*IBPA Independent*, August 2010); What's the Big Idea? (*The Licensing Journal*, January 2006) Copyright Claims Not to Be Toyed With (*The Licensing Journal*, May 2005); Has the Time Come for Solomon's Solution (*The Licensing Journal*, August 2004); The Bug List: Potential System Crashers in Software Contracts (e-Law insert to *Cincinnati Business Courier*, May 12, 2000); and Outsourcing Web Site Design: Who Owns the Rights? (e-Law insert to *Cincinnati Business Courier*, May 12, 2000).

13.     Gillen is a frequent speaker whose presentations include: Divvying Up the Digital Pie: The Fight Over Music Download & E-Book Royalties Just Got Hotter, Panel discussion for the New York Chapter of the Copyright Society of the USA, New York NY, April 5, 2011; Digital Media & Copyright Law: What students and faculty should know, Presentation at 2006 Joint Conference of iDMAa and IMS, Miami University, Oxford, OH, April 7, 2006; Contracts & Permissions, Presentation at 2006 Conference, Text and Academic Authors Association, Orlando, FL, July 7, 2006; Negotiating ESL/EFL Publishing Contracts, Panel Presentation at TESOL 39th Annual Convention, San Antonio, TX, March 31, 2005; Copyright and Digital Archives, Greater Cincinnati Library Consortium Symposium on Current Copyright Issues, Cincinnati State Technical and Community College, April 9, 2003; Data Mining and Privacy, The Circuit Members Only Marketing Roundtable, Cincinnati, OH, April 11, 2002; Copyright in the Digital Age, SOLO Digital Shoebox Project, Caldwell, OH , January 22, 2002; Cyber Law and Local Government, SSI User Group Mix 2000, Deer Creek State Park, OH, October 20, 2000; Book Publishing Section: Self Publishing and Negotiating Contracts, 73rd Annual Conference of the Outdoor Writers Association of America, Greensboro, NC, June 27, 2000; Negotiating for Electronic Rights (When to hold'em . . . When to

fold'em), Presentation at 2000 Conference, Text and Academic Authors Association, New Orleans, LA, June 22, 2000; De-Bugging a Software License, 11th Annual Advanced Computer Law Seminar, University of Dayton School of Law, Dayton, OH, June 9, 2000; Negotiating Web Site Development Contracts, Software Symposium, University of Kentucky Law School, March 18, 2000.

14.     Gillen is a member of: the Copyright Society of the U.S.A.; the American Bar Association Intellectual Property Section, including its Copyright Office Affairs Committee and Special Committee on Copyright & New Technologies; Past Member of the School Division Lawyers' Committee, Copyright Task Force and Ad Hoc Committee on Electronic Publishing with the Association of American Publishers.

15.     Bankes' November 5, 2010 email forwarded to Gillen an electronic file (the "Electronic File"). When printed out, the Electronic File was 61 pages long.

16.     The Electronic File contained fragments of multiple computer programs. Together, the Electronic File was a collage of software that Libertas had a hand in preparing between 2006 and 2010.

17.     Wood Herron was aware that the Electronic File was not the source code at issue between Libertas and Cherryhill.

18.     Wood Herron knew that Libertas intended to bring suit against Cherryhill over the use of the source code. Accordingly, Wood Herron asked the Copyright Office for expedited consideration of the registration application by Libertas to enable Libertas to sue Cherryhill for copyright infringement.

19.     Wood Herron filed a redacted copy of the Electronic File with the Copyright Office as the deposit copy (the "Deposited Work") in connection with Libertas' copyright application. The Copyright Office later assigned Registration No.

5

TXu 1-688-153 (the "Registration") to Libertas' work.

20.    To procure a copyright registration for Libertas, Wood Herron deliberately concealed certain material facts from the Copyright Office including, without limitation, the fact that:

a.    the Deposited Work contained various lines of source code that reflected copyright symbols consistent with copyright claims in years other than 2009;

b.    the Deposited Work was incomplete;

c.    the Deposited Work was the product of multiple authors; and

d.    the Deposited Work utterly lacked functionality and would not compile.

21.    To procure a copyright registration for Libertas, Wood Herron knowingly and deliberately made false representations to the Copyright Office including, without limitation, that:

a.    the Deposited Work was original, when it was a derivative;

b.    the Deposited Work was complete, when it was not;

c.    the Deposited Work was a single work, when in fact it is a composite or collage of several works;

d.    the Deposited Work was completed in 2009, when it was not, as it was later admitted the completed work was "inaccessible" at that time;

e.    the Deposited Work was the product of a single author;

f.    the Deposited Work was the unaltered best edition of a larger work, when it was not;

g.    the Deposited Work contained the first 25 pages of a larger work, when it did not;

6

      h.     the Deposited Work contained the last 25 pages of a larger work, when it did not;

      i.     the entire Deposited Work was a trade secret, when it was not; and

      j.     the Deposited Work related to "a dashboard to integrate individual software components into an integrated unit," when it did not.

22.    To prevent the Copyright Office from discovering the material omissions and false representations, Wood Herron redacted the Deposited Work to make it unreadable by any Copyright Office personnel. To that end, Wood Herron altered the Electronic File by obscuring the entire text black diagonal lines. The black diagonal lines made all but a few lines of the source code unreadable, as is evident from this illustrative excerpt:



23.    In an effort to fabricate a justification for the imposition of the black diagonal lines, Wood Herron advised the Copyright Office that the Deposited Work contained trade secrets.

24.    Wood Herron stated on the application: "Note to Copyright Office: This is an application for registration of an unpublished computer program containing trade secret material. Accordingly, one copy of 50 pages of the source code (in redacted form, with 49% of the page surface obscured) is enclosed as identifying material. The title

appears in unredacted form on page 1 and a copyright notice appears in unredacted form on page 15."

25.     Wood Herron did not, however, disclose to the Copyright Office who the owner of those trade secrets was.  Further, Wood Herron did not disclose to the Copyright Office that Libertas contended it possessed a trade secret in the manner in which it wrote the source code in the Deposited Work, separate and apart from the function and operation of the software containing that source code.

26.     Wood Herron intentionally withheld the nature and ownership of the claimed trade secrets to induce the Copyright Office to make the incorrect assumptions that the trade secret was owned by the copyright registrant and the trade secret otherwise comported with the requirements of state law.

27.     At the time Wood Herron knew that Libertas had no basis under Ohio or Kentucky law for claiming that it had a trade secret in the manner in which it wrote the source code in the Deposited Work and a larger work because: the manner in which source code is written is not protectable as a trade secret; the manner in which source code was written does not offer Libertas a commercial advantage; Libertas did not take any reasonable steps to safeguard the alleged confidentiality of the manner in which it wrote source code; Libertas did not require any employee or independent contractor to execute any agreement relating to the non-disclosure of the manner in which Libertas allegedly wrote source code; Libertas did not require any customer to execute any licensing agreement prior to sharing source code with that customer; and Libertas did not require Cherryhill to execute any licensing agreement prior to sharing it source code with Cherryhill.

28.     Wood Herron took these actions despite knowing that its conduct violated

8

pertinent federal regulations in various respects including, without limitation:

        a.      Wood Herron's submission to the Copyright Office failed to include a cover letter stating that the Deposited Work contains trade secrets;

        b.      Wood Herron failed to include an accompanying letter explaining the multiple copyright dates in the Deposited Work.

        c.      Wood Herron failed to file a "Limitation of Claim" enabling the Copyright Office to determine if "the particular program is a revised or derivative version."

        d.      Wood Herron redacted copyright information in the Deposited Work, thereby failing to file all pages containing copyright notices and copyright dates without any portions blocked out, in violation of 37 CFR § 202.20(c)(vii)(A)(2);

        e.      Wood Herron improperly used diagonal lines to obscure the entire Work when the Copyright Office instructs depositors to only block-out individual characters "with 'XXXXX's or blank spaces" per 37 CFR § 202.20(c)(vii)(A)(2);

        f.      By using diagonal lines, Wood Herron effectively blocked out the entire Deposited Work.  By rendering every line illegible, Wood Herron failed to deposit a work that included proportionately more unredacted material than unredacted material, in violation of 37 CFR § 202.20(c)(vii)(A)(2);

        g.      Wood Herron improperly blocked-out portions of the deposit that could not possibly constitute trade secrets, in violation of 37 CFR §202.20(c)(vii)(A)(2), which permits only "the trade secret portions [to be] blocked-out."

        h.      By using opaque diagonal lines on every page of the Deposited Work, Wood Herron failed to reveal "an appreciable amount of original computer code" without any redactions, in violation of 37 CFR §202.20(c)(vii) (A)(2); and

i.      Libertas failed to include "a statement inserted where each deletion is made" stating the number of characters redacted and the reason for redaction per 37 CFR § 202.20(c)(vii)(A)(2).

29.     Wood Herron took the foregoing actions with full knowledge that Libertas would, on the basis of these omissions of material fact and intentional misrepresentations by Wood Herron, obtain a copyright registration for the Deposited Work.  Wood Herron further knew that Libertas would use the deceptively obtained Registration to commence a federal lawsuit as an attempt to coerce Cherryhill into paying an unearned licensing fee in the absence of a licensing agreement.

30.     This Court has jurisdiction over the subject matter of the claims presented herein under Title 28, United States Code, section 1331 and section 1332.  This Court has supplemental jurisdiction under Title 28, United States Code, section 1367 over Plaintiff's claims under state law.

31.     This Court has personal jurisdiction over the Defendant.

32.     Venue is proper in this district pursuant to 28 U.S. Code §1391 because the events giving rise to the claims herein occurred in this District and Defendant is subject to personal jurisdiction in this District.

## COUNT I
## CONSPIRACY

33.     Cherryhill incorporates the allegations in each of the preceding Paragraphs of its Complaint as if fully rewritten herein.

34.     Wood Herron entered into a malicious agreement with Libertas to obtain a copyright registration.  The object of the agreement between Wood Herron and Libertas was to procure a copyright registration through deception, which could then be used to

provide the foundation for a federal lawsuit. As such, the object of the agreement was to aid and abet the abuse of process by Libertas against Cherryhill. This object and the means to achieve the same are prohibited under 17 U.S. Code §506.

35.     The actions of Wood Herron described herein constitute overt acts, beyond mere preparation, in furtherance of the unlawful and improper conspiracy between Wood Herron and Libertas.

36.     Wood Herron thus made it possible for Libertas to file a groundless lawsuit against Cherryhill for the purpose of coercing Cherryhill into paying for a license Libertas had not earned and no right to demand.

37.     For its part in the scheme, Wood Herron has received, or expects to receive, valuable consideration.

38.     By virtue of the conduct described herein, Wood Herron has proximately caused Cherryhill to incur damages in excess of the jurisdictional threshold of this Court to be proven at trial.

## COUNT II
## PUNITIVE DAMAGES

39.     Cherryhill incorporates the allegations in each of the preceding paragraphs of its Complaint as if fully rewritten herein.

40.     Wood Herron's acts and omissions, as described herein, were intentional and committed against Cherryhill with reckless disregard for Cherryhill's rights.

41.     Wood Herron's acts and omissions, as described herein, were perpetrated maliciously, and with the intent to deprive Cherryhill of rights having a value exceeding the jurisdictional threshold of this Court.

42.     The actions of Wood Herron were knowing, intentional, and with a

malicious disregard for the rights of Cherryhill. The conduct of Wood Herron was willful and wanton.

43.     As a direct and proximate result of Wood Herron' intentional and malicious conduct described herein, Cherryhill is entitled to an award of punitive damages, to be determined at trial.

## COUNT III
## ABUSE OF PROCESS

44.     Counterclaimants incorporate the allegations in each of the preceding paragraphs of their Counterclaim as if fully rewritten herein.

45.     Wood Heron set the Registration application in motion in improper form and without probable cause.

46.     Wood Heron knew that the Deposited Work was not as it was described in the Registration application.

47.     Wood Heron's acts as described herein violate 17 U.S. Code §506.

48.     Wood Heron attempted to conceal the true nature of the Deposited Work by manipulating the printout of the Deposited Work to include thick black lines that prevent reading of the printed document.

49.     In doing so, Wood Heron perverted the copyright registration process in an attempt to accomplish an ulterior purpose for which it was not designed. Specifically, Wood Heron sought to facilitate Libertas' efforts to maliciously interfere with Cherryhill's business, extort improper payments from Cherryhill, maliciously intimidate Schwartz, interfere with Schwartz' employment at Cherryhill, interfere with intellectual property rights to which Libertas has no claim, and wrongfully manipulate 17 U.S. Code §412 to obtain federal jurisdiction over purely state law claims between

citizens of the same state and issue federal process in a civil action based on the same. These ends are collateral advantages, not properly involved in the copyright registration procedure itself. As such, Wood Heron wrongfully used the copyright registration process to create a weapon for Libertas, its client, to use against Cherryhill.

50.     As a direct and proximate result of Wood Heron's abuse of the copyright registration process, Cherryhill has suffered damages in an amount exceeding the jurisdictional threshold of this Court, to be determined at trial.

## COUNT IV
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S. CODE §2201

51.     Cherryhill incorporates the allegations in each of the preceding paragraphs of its Complaint as if fully rewritten herein.

52.     There is an actual case and controversy between Cherryhill and Wood Heron as to the false and misleading information included in the Registration application and Wood Heron's knowledge of the same.

53.     Wood Heron knowingly misrepresented information relating to the Registration to the Copyright Office, as described herein.

54.     Said misrepresentations were material to the copyright registration process. The Register of Copyrights would not have issued the Registration had the true information been revealed.

55.     To the extent that the false and misleading copyright registration confers jurisdiction over a copyright infringement claim then the adverse positions of the parties regarding these controversies have crystallized and the conflict of interest is real and immediate. Cherryhill has a real and reasonable apprehension that it will be subject to continued litigation of currently pending infringement action filed by Libertas if the

Court does not find that the Registration is void by reason of Wood Heron's misrepresentations.

56. Cherryhill is entitled to an Order that the Registration is void for the fraudulent misrepresentations described above and that the related Copyright is unenforceable.

**WHEREFORE**, Plaintiff Cherryhill Management, Inc., demands judgment in its favor against Defendant WOOD HERRON EVANS, L.L.P., as follows:

a. for compensatory damages in an amount to be determined at trial;

b. for punitive damages in an amount to be determined at trial;

c. for an order requiring Defendant to hold in trust all benefits and profits it has derived as a result of its tortious conduct;

d. for an order requiring Defendant to produce an unredacted copy of the Deposited Work;

e. for pre-and post-judgment interest thereon;

f. for an award of costs and attorney's fees; and

g. such other relief to which the Court deems Plaintiff entitled.

Respectfully submitted,

Scott R. Thomas (0061040)
HEMMER DEFRANK PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
(859) 344-1188
(859) 578-3869 (fax)
sthomas@HemmerLaw.com

Trial Attorney for Plaintiff,
Cherryhill Management, Inc.

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues.

Respectfully submitted,

Scott R. Thomas (0061040)
HEMMER DEFRANK PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
(859) 344-1188
(859) 578-3869 (fax)
sthomas@HemmerLaw.com

Trial Attorney for Plaintiff,
Cherryhill Management, Inc.

15